Mark H. Moore
REAVIS PARENT LEHRER LLP
41 Madison Avenue
New York, New York 10010
Tel.: (212) 763-4100
Fax: (212) 763-4141
mmoore@rpl-law.com

*Attorneys for Plaintiff/Counterclaim-Defendant*
*Fidelity Information Services, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FIDELITY INFORMATION SERVICES, INC.,<br><br>*Plaintiff/Counterclaim-Defendant*,<br><br>v.<br><br>DEBTDOMAIN (USA) INC.,<br>DAVID LEVY, SETH ROTHMAN,<br><br>*Defendants*,<br><br>and<br><br>DEBTDOMAIN GLMS PTE LTD.,<br><br>*Defendant/Counterclaim-Plaintiff.* | Case No. 09-cv-07589-LAK<br><br>**PLAINTIFF/COUNTERCLAIM-DEFENDANT FIDELITY INFORMATION SERVICES, INC.'S ANSWER TO DEFENDANT/COUNTERCLAIM-PLAINTIFF DEBTDOMAIN GLMS PTE LTD.'S COUNTERCLAIMS** |

Plaintiff/Counterclaim-Defendant Fidelity Information Services, Inc. ("Fidelity"), by its undersigned attorneys, for its Answer to Defendant/Counterclaim-Plaintiff Debtdomain GLMS Pte Ltd.'s ("GLMS") Counterclaims ("Counterclaims"), alleges as follows:

### GENERAL RESPONSE TO COUNTERCLAIMS

1. GLMS's counterclaims reflect the height of audacity and bad faith by Defendants. GLMS's allegations are knowingly false, baseless, and malicious, and are designed and timed to interfere with sales of Fidelity's newly-released and superior loan syndication front office software, SyndTrak 4. GLMS's allegation are particularly outrageous because GLMS, and the

{00581736; 1}

other Defendants (including Debtdomain (USA) Inc. ("Debtdomain USA," and together with GLMS, "Debtdomain") willfully, knowingly, and brazenly misappropriated Fidelity's confidential information and blatantly copied and created a nearly identical version of the main screen from Fidelity's SyndTrak 3 software (which is the subject of Fidelity's original complaint in this action). Now, Debtdomain, in order to deflect attention from its own wrongdoing, has attempted to cobble together a copycat claim against Fidelity, knowing that it has no legitimate basis for doing so.

2.  Discovery during this litigation has shown that Debtdomain, as well as defendants David Levy ("Levy") and Seth Rothman ("Rothman"), and GLMS executive Sean Tai, knowingly and willfully violated noncompetition and confidentiality obligations that Levy and Rothman, former Fidelity employees and key SyndTrak developers, had to Fidelity.

3.  Debtdomain has waylaid numerous of Fidelity's SyndTrak 3 clients by means of copying SyndTrak 3's main computer screen and related "customer relationship management" ("CRM") features, and by misappropriating confidential Fidelity information concerning design, features, and functionality. The evidence of Debtdomain's willful misappropriation and copyright violations is voluminous, and includes damning evidence that Debtdomain refused to produce for many months, until forced to by the Court. On top of that, Fidelity's recent release of its superior, web-based SyndTrak 4 product has put Debtdomain under enormous pressure to regain momentum by any means, no matter how improper. Debtdomain's reaction is this baseless and malicious set of counterclaims, which are evidently designed to scare customers who are on the verge of signing up with Fidelity for SyndTrak 4. In fact, within a day of filing its counterclaims, Debtdomain was on the phone with prospective SyndTrak 4 customers threatening them with potential liability.

4.      The hypocrisy of Debtdomain's filing is appalling. Debtdomain knows that in March 2009, Fidelity's employees saw a copy of the Debtdomain product at a client's offices and were shocked to see that Debtdomain had created a screen which was nearly identical to Fidelity's main screen. Debtdomain knows that Fidelity then sought information about Debtdomain to confirm the extent of Debtdomain's copying of SyndTrak 3. Debtdomain knows that the marketing information that Debtdomain made available to potential customers, at issue in the counterclaims, was provided with no confidentiality restrictions and was of no value in designing SyndTrak 4. Debtdomain knows that the design of the infrastructure for Fidelity's SyndTrak 4 began in 2007, long before the acts on which Debtdomain's counterclaims are based, and that there is not a shred of evidence supporting the allegation that Fidelity used the information at issue to design SyndTrak 4.

5.      It is ironic and shameful for Debtdomain to accuse Fidelity of misappropriating from Debtdomain. Fidelity misappropriated nothing. Instead, it was *Debtdomain* that willfully and illegally copied the SyndTrak 3 main screen and other elements of the SyndTrak product, misappropriated confidential Fidelity information provided by Levy and Rothman, and knowingly employed Rothman in violation of his noncompetition obligations. Defendants' copying, misappropriation and other wrongful acts were critical to Debtdomain's campaign to steal away Fidelity's SyndTrak 3 clients.

## NATURE OF THE COUNTERCLAIMS

6.      Fidelity admits that GLMS's customers include banks that were previously clients of Fidelity's SyndTrak software, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 66 of the Counterclaims, and therefore denies those allegations.

7. Fidelity admits that it is a Fortune 500 company whose shares are publicly traded on the New York Stock Exchange, that it sells a loan syndication software product known as SyndTrak, and has approximately 30,000 employees. Fidelity also admits that it did not sell a web-based syndication/bookrunning application prior to 2010. Fidelity denies the remaining allegations set forth in paragraph 67 of the Counterclaims.

8. Fidelity denies the allegations set forth in paragraph 68 of the Counterclaims, and states that they are a gross misrepresentation of facts, except further states that Fidelity is without knowledge or information sufficient to form a belief as to the truth of what GLMS's clients purportedly have told GLMS.

9. Fidelity denies the allegations set forth in paragraph 69 of the Counterclaims, except states that GLMS purports to assert the baseless allegations set forth therein.

## PARTIES

10. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 70 of the Counterclaims.

11. Fidelity admits the allegations set forth in paragraph 71 of the Counterclaims.

## FACTS COMMON TO ALL COUNTERCLAIMS

12. Fidelity denies the allegations set forth in paragraph 72 of the Counterclaims, and further states that Fidelity sought a screen shot of Debtdomain's product to confirm the blatant copying by Debtdomain of Fidelity's main screen (controlling its CRM function) that Fidelity's employees discovered when they saw the Debtdomain product prominently displayed on a customer's computer during a visit with the customer.

13. Fidelity admits that Kaushik Punjabi ("Punjabi") is employed by Fidelity as a relationship manager with respect to Fidelity's SyndTrak sales outside of the United States, and denies the remaining allegations set forth in paragraph 73 of the Counterclaims.

14. Fidelity admits the allegations set fort in paragraph 74 of the Counterclaims.

15. Fidelity denies the allegations set forth in paragraph 75 of the Counterclaims, except admits that, on or about March 18, 2009, Ariel Elkayam ("Elkayam") sent an e-mail to Punjabi, which e-mail was also copied to Pedro Pereiro ("Pereiro"), another Fidelity employee, and refers to the e-mail for the true and correct contents thereof.

16. Fidelity denies the allegations set forth in paragraph 76 of the Counterclaims, except admits that, on or about March 18, 2009, Punjabi sent an e-mail to Shahpuri, an acquaintance who was then working at Edelweiss Capital, and refers to the e-mail for the true and correct contents thereof.

17. Fidelity denies the allegations set forth in paragraph 77 of the Counterclaims, except admits that Edelweiss did not appear to have an immediate appetite for a CRM product.

18. Fidelity denies the allegations set forth in paragraph 78 of the Counterclaims, except admits that Punjabi requested that Shahpuri contact Debtdomain and seek information concerning Debtdomain (which had copied Fidelity's product in substantial ways), and that Shahpuri agreed to do so, and refers to the text of the March 18, 2009 e-mail for the true contents thereof.

19. Fidelity denies the allegations set forth in paragraph 79 of the Counterclaims.

20. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 80 of the Counterclaims.

21. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 81 of the Counterclaims.

22. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 82 of the Counterclaims.

23. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 83 of the Counterclaims, except denies that Debtdomain treated such information as "confidential" or "proprietary."

24. Fidelity denies the allegations set forth in paragraph 84 of the Counterclaims, except admits that Shahpuri communicated a summary of a conversation with Skinner to Punjabi.

25. Fidelity denies the allegations set forth in paragraph 85 of the Counterclaims, and refers to the March 31, 2009 e-mail for the true and correct contents thereof.

26. Fidelity denies the allegations set forth in paragraph 86 of the Counterclaims, except admits that Elkayam forwarded an e-mail to Kostyra and Levy on April 1, 2009, and refers to the e-mail for the true and correct contents thereof.

27. Fidelity denies the allegations set forth in paragraph 87 of the Counterclaims, except admits that Elkayam sent an e-mail to Punjabi on April 1, 2009, and refers to the April 1, 2009 e-mail for the true and correct contents thereof.

28. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 88 of the Counterclaims, except denies that Debtdomain treated such information as "confidential" or "proprietary."

29. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 89 of the Counterclaims.

30. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 90 of the Counterclaims.

31. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 91 of the Counterclaims, except denies that Debtdomain treated such documents as "confidential."

32. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 92 of the Counterclaims, except denies that Debtdomain treated such documents as "confidential."

33. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 93 of the Counterclaims, except denies that Debtdomain treated such documents as "confidential," and refers to such documents for the true and correct contents thereof.

34. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 94 of the Counterclaims, except denies that Debtdomain treated such documents as "confidential" or "proprietary," and refers to such documents for the true and correct contents thereof.

35. Fidelity denies the allegations set forth in paragraph 95 of the Counterclaims, except admits that Shahpuri sent an e-mail with attachments to Punjabi on April 20, 2009, refers to the April 1, 2009 e-mail and its attachments for the true and correct contents thereof, and denies that Debtdomain treated such documents as "confidential."

36. Fidelity denies the allegations set forth in paragraph 96 of the Counterclaims, except admits that Punjabi received and sent e-mails on April 21, 2009, refers to such e-mails for

the true and correct contents thereof, and denies that Debtdomain treated such documents as "confidential."

37. Fidelity denies the allegations set forth in paragraph 97 of the Counterclaims, except admits that Punjabi received and sent e-mails with an attachment on April 21, 2009, refers to such e-mails for the true and correct contents thereof, admits that Medd was head of operations and Clark was a SyndTrak developer, and further states that Punjabi believed he was forwarding a non-confidential product brochure.

38. Fidelity denies the allegations set forth in paragraph 98 of the Counterclaims, except refers to the referenced documents for the true and correct contents thereof, except admits that Matthew Reitano was the lead architect with respect to SyndTrak's front office systems.

39. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 99 of the Counterclaims, except denies that Debtdomain treated such documents as "confidential."

40. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 100 of the Counterclaims, and therefore denies those allegations.

41. Fidelity denies the allegations set forth in paragraph 101 of the Counterclaims, and further refers to the referenced documents for the true and correct contents thereof.

42. Fidelity denies the allegations set forth in paragraph 102 of the Counterclaims, and further refers to the referenced documents for the true and correct contents thereof.

43. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 103 of the Counterclaims.

44. Fidelity denies the allegations set forth in paragraph 104 of the Counterclaims, and states that they grossly mischaracterize the nature and value of the information in the documents at issue, and refers to the referenced documents for the true and correct contents thereof. Fidelity is without knowledge or information sufficient to form a belief as to the truth of the allegations with respect to who at Debtdomain was aware of the information and to whom Debtdomain provided the information, but states that access by "less than ten persons within Debtdomain" amounts to essentially the entire company.

45. Fidelity denies the allegations set forth in paragraph 105 of the Counterclaims.

46. Fidelity denies the allegations set forth in paragraph 106 of the Counterclaims.

47. Fidelity denies the allegations set forth in paragraph 107 of the Counterclaims.

48. Fidelity denies the allegations set forth in paragraph 108 of the Counterclaims.

49. Fidelity denies the allegations set forth in paragraph 109 of the Counterclaims.

50. Fidelity denies the allegations set forth in paragraph 110 of the Counterclaims.

51. Fidelity denies the allegations set forth in paragraph 111 of the Counterclaims.

## AS AND FOR A FIRST COUNTERCLAIM
### (Common-Law Fraud)

52. In response to the allegations set forth in paragraph 112 of the Counterclaims, Fidelity repeats and realleges each and every response contained in paragraphs 1 through 51 above as if fully set forth herein.

53. Fidelity denies the allegations set forth in paragraph 113 of the Counterclaims.

54. Fidelity denies the allegations set forth in paragraph 114 of the Counterclaims.

55. Fidelity denies the allegations set forth in paragraph 115 of the Counterclaims.

56. Fidelity denies the allegations set forth in paragraph 116 of the Counterclaims.

57. Fidelity denies the allegations set forth in paragraph 117 of the Counterclaims.

## AS AND FOR A SECOND COUNTERCLAIM
### (Misappropriation of Trade Secrets)

58. In response to the allegations set forth in paragraph 118 of the Counterclaims, Fidelity repeats and realleges each and every response contained in paragraphs 1 through 57 above as if fully set forth herein.

59. Fidelity denies the allegations set forth in paragraph 119 of the Counterclaims.

60. Fidelity denies the allegations set forth in paragraph 120 of the Counterclaims.

61. Fidelity denies the allegations set forth in paragraph 121 of the Counterclaims.

## AS AND FOR A THIRD COUNTERCLAIM
### (Unfair Competition)

62. In response to the allegations set forth in paragraph 122 of the Counterclaims, Fidelity repeats and realleges each and every response contained in paragraphs 1 through 61 above as if fully set forth herein.

63. Fidelity denies the allegations set forth in paragraph 123 of the Counterclaims.

64. Fidelity denies the allegations set forth in paragraph 124 of the Counterclaims.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Unjust Enrichment)

65. In response to the allegations set forth in paragraph 125 of the Counterclaims, Fidelity repeats and realleges each and every response contained in paragraphs 1 through 64 above as if fully set forth herein.

66. Fidelity denies the allegations set forth in paragraph 126 of the Counterclaims.

67. Fidelity further avers that Debtdomain is not entitled to any of the relief demanded in Debtdomain's prayer for relief, nor any other relief, legal or equitable, against Fidelity.

68.     All allegations in Debtdomain's Counterclaims not specifically admitted, denied, or otherwise responded to in the above numbered paragraphs are hereby denied.

## DEFENSES

As and for it affirmative defenses, Fidelity asserts as follows:

### AS AND FOR ITS FIRST AFFIRMATIVE DEFENSE

69.     The Counterclaims fail to state a claim upon which relief can be granted.

### AS AND FOR ITS SECOND AFFIRMATIVE DEFENSE

70.     GLMS, by its own acts and omissions, is estopped from recovering any alleged loss from Fidelity.

### AS AND FOR ITS THIRD AFFIRMATIVE DEFENSE

71.     GLMS lacks standing to assert its claims for damages herein.

### AS AND FOR ITS FOURTH AFFIRMATIVE DEFENSE

72.     GLMS's claims are barred by the equitable doctrine of laches.

### AS AND FOR ITS FIFTH AFFIRMATIVE DEFENSE

73.     GLMS's claims are barred by the doctrine of unclean hands.

### AS AND FOR ITS SIXTH AFFIRMATIVE DEFENSE

74.     GLMS's claims are barred by waiver.

### AS AND FOR ITS SEVENTH AFFIRMATIVE DEFENSE

75.     GLMS has failed to mitigate its purported damages.

### AS AND FOR ITS EIGHTH AFFIRMATIVE DEFENSE

76.     GLMS failed to maintain the confidentiality of its purportedly "confidential" documents.

## AS AND FOR ITS NINTH AFFIRMATIVE DEFENSE

77.     Fidelity alleges that that in or about January 2008, and continuing through September 11, 2008, Rothman actively solicited future full time employment with Debtdomain, a competitor to Fidelity in the loan syndication software business.  Moreover, Rothman was employed part time as a consultant and was paid substantial sums by GLMS and the other Defendants to, among other things:  (1) perform due diligence on the Debtdomain product and software in connection with a possible investment in Debtdomain by Levy; (2) make recommendations to Debtdomain on software platforms, data transfers and software design; and (3) participate in a key internal marketing conference designed to make Debtdomain a more effective competitor.

78.     GLMS was fully aware that Rothman was barred from certain competitive activity with Fidelity until September 11, 2008, pursuant to a stipulation so ordered by this Court, issued after Fidelity had settled a lawsuit brought against Rothman for theft of trade secrets and other wrongdoing, encaptioned *Fidelity National Information Services, Inc. v. Seth N. Rothman*, Case No. 07 Civ. 7756 (JGK) (the "Rothman Order").  The Rothman Order in fact barred Rothman's activities as set forth in the previous paragraph, and his conduct constitutes contempt of this Court's order.  Defendants, including GLMS, encouraged and benefited from Rothman's violation of the Rothman order, which was designed to protect Fidelity from competition from Rothman.

79.     Moreover, both Levy and Rothman violated the confidentiality provisions of agreements they had entered into with Fidelity.  The Rothman Order incorporated by reference Rothman's "Confidentiality, Work Product and Non-Competition Agreement," with CDS (a predecessor to Fidelity) which by its terms barred the use or disclosure of trade secrets,

confidential or proprietary information by Rothman, which was not generally known to the public or the "information technology industry." Similarly, the Employment Agreement dated November 30, 2003, between Levy and Fidelity barred the use or disclosure of trade secrets, confidential or proprietary information by Levy that was not generally available to the public.

80. Nevertheless, from the period of at least January 2008 through and including the present, Levy and/or Rothman have revealed and used detailed trade secret, confidential and proprietary information, as defined in their agreements with Fidelity, and GLMS has accepted such information and the use of such information by Levy and Rothman while in Debtdomain's employ. This information includes, but is not limited to: (a) detailed information about the SyndTrak product, its design and operation; and (b) detailed information about Fidelity and its SyndTrak customers.

81. GLMS's encouragement of Rothman's violation of the Rothman Order, and Levy's violation of the Employment Agreement, and GLMS's acceptance of the benefits of those violations, constitute unfair trade practices under New York law, unjust enrichment and tortious interference with contract.

82. GLMS's wrongful conduct has caused Fidelity profound damages. Based upon Rothman's "due diligence" work, conducted in violation of the Rothman Order, Levy (joined by several investors which he assembled), made key investments in GLMS which permitted it to further develop its loan services product in a way which has caused damage to Fidelity. Moreover, Rothman's and Levy's use of confidential, trade secret and proprietary information, as barred by their agreements with Fidelity, caused profound damage to Fidelity as well. Such information was of direct benefit in the development and marketing of the Debtdomain product (including the copying of its features and its look and feel).

83. These violations of law are additional proximate causes of the enormous losses suffered by Fidelity and act as an offset to any claim of damages asserted by GLMS herein.

WHEREFORE, Plaintiff/Counterclaim-Defendant, Fidelity, prays for judgment against Defendants on its counterclaims as follows:

1. Dismissing Defendant/Counterclaim-Plaintiff GLMS's Counterclaims in their entirety and with prejudice, with GLMS taking nothing thereby;

2. Denying GLMS' requests for any injunctive relief whatsoever as requested in its Counterclaims;

3. Granting Fidelity its full costs, including, as part of such costs, Fidelity's reasonable attorneys' fees; and

4. Granting Fidelity such other and further relief as the Court may deem equitable, just, and proper.

Dated: New York, New York
September 30, 2010

Respectfully submitted,

REAVIS PARENT LEHRER LLP
*Attorneys for Plaintiff/Counterclaim-Defendant Fidelity Information Services, Inc.*

By: /s/ Mark H. Moore

Mark H. Moore
41 Madison Avenue
New York, New York 10010
Tel.: (212) 763-4100
Fax: (212) 763-4141
mmoore@rpl-law.com

{00581736; 1}

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document **PLAINTIFF/COUNTERCLAIM-DEFENDANT FIDELITY INFORMATION SERVICES, INC.'S ANSWER TO DEFENDANT/COUNTERCLAIM-PLAINTIFF DEBTDOMAIN GLMS PTE LTD.'S COUNTERCLAIMS** was served via first-class mail on September 30, 2010 upon Defendants' counsel, addressed as follows:

Scott S. Balber, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
E-mail: sbalber@chadbourne.com

and was filed through the Court's CM/ECF system on September 30, 2010.

By: _____