UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FIDELITY INFORMATION SERVICES, INC.,   :
   :
              Plaintiff,   :
   :
         -against-   :   **REPORT and RECOMMENDATION**
   :
DEBTDOMAIN GLMS PTE LTD.,   :   09 Civ. 7589 (LAK)(KNF)
DEBTDOMAIN (USA) INC.,   :
DAVID LEVY and SETH ROTHMAN,   :
   :
          Defendants.   :
------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On March 26, 2010, Fidelity Information Services, Inc. ("FIS") filed the operative complaint

in this action, asserting claims of copyright infringement and unfair competition against the

defendants, Debtdomain GLMS Pte Ltd. ("GLMS"), Debtdomain (USA) Inc. ("USA") (collectively

with GLMS, "Debtdomain"), David Levy ("Levy") and Seth Rothman ("Rothman"), as well as a

breach of contract cause of action against Levy.

Before the Court is the defendants' motion for summary judgment on all claims.

## BACKGROUND

FIS is an Arkansas corporation, with its principal place of business in Florida.  GLMS is a

Singapore corporation, with its principal place of business in England.  USA is a Delaware

corporation, with its principal place of business in New York.  Levy and Rothman are individuals

residing in New York.  Since September 15, 2008, Levy has served as co-chief executive officer

("co-CEO") of the Debtdomain Group.[1]  Debtdomain and FIS are competitors in the loan syndication

---

[1]     In Levy's Employment Agreement with USA, the Debtdomain Group is a term defined as
including GLMS, USA and Debtdomain Limited, the parent company of USA.

software industry.

Debtdomain Syndication™ ("Syndication") is a web-based loan syndication platform, first developed by Debtdomain in 2002.  SyndTrak3 ("SyndTrak") is a non-web-based software application marketed by FIS.  Both programs facilitate the underwriting of large loans by multiple investors.

SyndTrak was developed by a company known as Customized Database Solutions, Inc. ("CDS").  Levy was the president and majority shareholder of CDS, which he sold to FIS in 2003. After FIS acquired CDS as a wholly-owned subsidiary, Levy became an employee of FIS, until April 15, 2005.  In connection with his employment, Levy entered into a Non-Competition Agreement ("NCA") with FIS, dated November 30, 2003.  The NCA, which expired on November 30, 2007, prohibited Levy from, inter alia: (1) "[s]oliciting or diverting from CDS any business of any of CDS's Customers or Prospective Customers with which [Levy] [] had Material Contact during [his] employment with CDS; and (2) "[p]ersonally engaging in a business which, or entering into employment with, assisting the business of or consulting for, any person which, competes with CDS's Business . . . ."

FIS has registered copyrights, in two versions of SyndTrak, with the United States Copyright Office.  The Certificate of Registration for SyndTrak version 3.1.222 lists 2005 as the year of completion and August 17, 2005, as the date of first publication.  The Certificate of Registration for SyndTrak version 3.269 reflects 2009 as the year of completion and April 1, 2009, as the date of first publication.  The effective date of registration for both versions is July 2, 2009.  In addition, both certificates list "[p]revious versions, copyright in which is owned by Claimant" as the "[m]aterial excluded from this [copyright] claim" and "computer program" as the "[n]ew material included in claim."

On August 31, 2009, FIS commenced this action.  According to FIS, Syndication "is copied

and/or derived from and substantially similar to the user interface and screen display of the SyndTrak Software, as registered in the SyndTrak Registrations [for versions 3.1.222 and 3.269][.]"  FIS makes no allegations of source code infringement.  FIS alleges that the defendants copied the SyndTrak main screen display in October 2008.  FIS's breach of contract cause of action is premised on its contention that Levy violated his NCA by, prior to November 30, 2007: (1) contacting and visiting FIS customers to demonstrate Debtdomain products; and (2) having his name appear as co-CEO on Debtdomain's website.

## DISCUSSION

### I.       Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party."  Id.  A motion for summary judgment requests that a district court perform "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250, 106 S. Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record, including, inter alia, depositions, documents, and affidavits or declarations, that "it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986); see also Fed. R. Civ. P. 56(c)(1).  Once the moving party has met its burden, the non-moving party must "go

beyond the pleadings" and provide its own evidence or make citation to portions of the existing record that show a genuine triable issue exists.  See Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.  To defeat a motion for summary judgment, the non-moving party must come forward with more than "a scintilla of evidence[.]"  Anderson, 477 U.S. at 252, 106 S. Ct. at 2512.

In evaluating a motion for summary judgment, a district court's "function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249, 106 S. Ct. at 2511.  Hence, a district court should not make credibility determinations in ruling on a motion for summary judgment.  See id. at 255, 106 S. Ct. at 2513.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id.

## II.    Copyright Infringement

### A.    Liability

To prevail on a copyright infringement claim, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tele. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991).  A Certificate of Registration from the United States Register of Copyrights "made before or within five years after first publication of the work shall constitute prima facie [sic] evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  The defendant bears the burden of proving the invalidity of a registered copyright.  See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001).  Copyright registration is a precondition to filing an infringement claim in federal court.  See Reed Elsevier, Inc. v. Muchnick, – U.S. –, 130 S. Ct. 1237, 1241 (2010).

"The plaintiff may prove defendant's copying either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work and (2) that

defendant's work is substantially similar to the plaintiff's copyrightable material." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 701 (2d Cir. 1992). Although the inquiry into substantial similarity often raises questions of fact, "[s]ummary judgment may be appropriate when the similarity between the competing works concerns only non-copyrightable elements of the plaintiff's work, or when no reasonable jury, properly instructed, could find that the two works are substantially similar[.]" Kregos v. Associated Press, 3 F.3d 656, 663 (2d Cir. 1993)(citation and internal quotation marks omitted), cert. denied, 510 U.S. 1112, 114 S. Ct. 1056 (1994).

**Ownership of Valid Copyright**

The defendants challenge the validity of FIS's copyright in its screen display, contending that FIS has not proffered evidence that the screen display existed at the time the alleged infringement commenced in 2008.

Under the Copyright Act, a derivative work is defined as "a work based upon one or more preexisting works[.]" 17 U.S.C. § 101. The copyright in a derivative work extends only to the newly contributed material, not to any preexisting material utilized. See 17 U.S.C. § 103(b). Nevertheless, the Second Circuit has held that registration of a derivative work is sufficient to permit an action for infringement of an unregistered preexisting work, provided the claimant is the author of both works. See Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 747 (2d Cir. 1998). However, to extend protection to the preexisting work, the Certificate of Registration for the derivative work must identify "the preexisting matter that is the basis of [the] infringement action." I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F. Supp. 2d 521, 529 (S.D.N.Y. 2004)

"In the case of computer programs, an updated or modified version of an original program constitutes a derivative work." Jamison Bus. Sys., Inc. v. Unique Software Support Corp., No. CV 02-4887, 2005 WL 1262095, at *8 (E.D.N.Y. May 26, 2005). Registration of a copyright in a computer program extends to "all copyrightable expression embodied in [the] [] program, including

computer screen displays . . . ."  Registration and Deposit of Computer Screen Displays, 53 Fed. Reg. 21817 (June 10, 1988)(to be codified at 37 C.F.R. pt. 202); see Harbor Software, Inc. v. Applied Sys., Inc., 925 F. Supp. 1042, 1052 (S.D.N.Y. 1996)("A copyright registration of the code extends to the screen displays . . . ."); 2-7 Nimmer on Copyright § 7.18 (describing the view that a single registration of a computer program extends to screen displays as "the correct approach").

The screen display FIS alleges the defendants infringed appears, from the screen shot provided to the Court, to be generated by SyndTrak version 3.269, in which FIS obtained a copyright in 2009, after the defendants commenced their alleged infringement.  See I.M.S., 307 F. Supp. 2d at 527 ("Because its Registration Certificate speaks of a work first published in January of 2003, it covers something other than a work that was published (and allegedly infringed) in March of 2002.").  FIS contends its screen display is preexisting material within the derivative work – SyndTrak version 3.269 –  and therefore protected under the doctrine articulated in Streetwise.  However, as the defendants note, Streetwise is distinguishable.  In that case, the alleged infringement occurred after the creation of both the unregistered preexisting work and the registered derivative.  See Streetwise, 159 F.3d at 745-46.  However, in this case, the plaintiff alleges that the infringement commenced prior to the creation of the registered derivative.

A plaintiff may not "register and sue on a version of a software program that was created after the version that Defendants allegedly copied, by [] characterizing the registered work as a derivative of an earlier work that was created before the alleged infringement."  Oskar Sys., LLL v. Club Speed, Inc., 745 F. Supp. 2d 1155, 1163 (C.D. Cal. 2010).  As one court noted, this would "open the door to fraud" because it would allow a plaintiff to register a derivative work and claim that a defendant "infringed material carried over into the derivative work from the pre-existing one, even though the [defendant's] alleged infringement had commenced before the derivative was created."  Id.  FIS's Certificate of Registration does not aid the Court in determining whether the

screen display generated by SyndTrak 3.269 is preexisting material, as it lists "computer program" as the "[n]ew material included in claim[.]"  This description "gives no indication of what precise underlying or preexisting work was supplemented" by the derivative.  See I.M.S., 307 F. Supp. 2d at 530; see also Oskar Sys., 745 F. Supp. 2d at 1164 (registration stating that work was derivative "of prior versions of the same computer program" is imprecise and, therefore, does not encompass the preexisting work).

Absent evidence that the screen display generated by SyndTrak 3.269 is a preexisting work, FIS does not have a valid copyright upon which it may bring suit.  As such, granting the defendants summary judgment on the copyright claim is warranted.

## III.    Breach of Contract

The sole basis, in the record, for FIS's breach of contract cause of action against Levy is testimony from Joshua Robinson ("Robinson"), FIS's head of business development for front-end products, that, prior to November 30, 2007, he: (1) received a telephone call from a then-client, who told Robinson that Levy had visited him to demonstrate Debtdomain's product; and (2) saw Levy listed as co-CEO on Debtdomain's website.  Robinson testified that the client call and his observation of Levy's name on Debtdomain's website both occurred during the summer of 2007.  Though Robinson later testified that he could be mistaken about the date on which he observed Levy's name on Debtdomain's website, he stated that FIS was "actively engaged in litigation with Seth Rothman at the time."  The litigation referenced by Robinson was pending from August 31, 2007 to October 18, 2007.

At his deposition, Levy testified that, prior to expiration of his NCA, he never met with any potential customers for Debtdomain, nor did his name appear on Debtdomain's website as co-CEO.  Moreover, Debtdomain has provided source code from its website, authenticated by George Barker ("Barker"), a software developer at USA, who attests that the code provided shows that Levy's

"name did not appear on the 'Management' section of the Debtdomain website for any of the dates from July 30, 2007 through March 18, 2008."

Robinson's testimony, recounting the statement made by his former client, is inadmissible hearsay that cannot be considered on a motion for summary judgment.  See Fed. R. Evid. 801(c)(definition of hearsay).  Moreover, Robinson's testimony regarding Levy's name on Debtdomain's website provides only "a scintilla of evidence[,]" see Anderson, 477 U.S.  at 252, 106 S. Ct. at 2512, to support FIS's breach of contract cause of action, particularly in light Debtdomain's source code evidence.  Given the dearth of evidence supporting FIS's allegation that Levy breached his NCA, Levy is entitled to judgment, as a matter of law, on this cause of action.

## IV.    Unfair Competition

The defendants contend that FIS's unfair competition cause of action is: (1) preempted by federal law, to the extent it rests on FIS's copyright infringement claim; and (2) duplicative of FIS's breach of contract cause of action, to the extent it rests on Levy's alleged violation of his NCA.  FIS does not challenge the defendants' argument, rather, it claims that wrongdoing not alleged in the Third Amended Complaint, but revealed during discovery, supports its unfair competition cause of action.

"A state law claim is not preempted if [an] 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim.'"  Altai, 983 F.2d at 716 (citation omitted)(emphasis in original).  Following this approach, the Second Circuit has held that "unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301" of the Copyright Act.  Id. at 717; see Kaplan v. Stock Mkt. Photo Agency, Inc., 133 F. Supp. 2d 317, 328 (S.D.N.Y. 2001)(finding unfair competition claim to be preempted by federal copyright law where plaintiff alleged copying of his work).  Where an unfair competition "claim contains no element to qualitatively differentiate it from

those areas protected by copyright," it is preempted by federal copyright law. <u>Kregos</u>, 3 F.3d at 666. In this case, FIS has drafted its Third Amended Complaint to indicate that the conduct alleged therein constitutes unfair competition. From this language, there is not a qualitative difference between FIS's unfair competition cause of action and its copyright infringement claim. Hence, the former cause of action is preempted.

"It is well-settled . . . that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract[.]" <u>Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.</u>, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007)(internal quotation marks and citation omitted). To the extent FIS's unfair competition cause of action relates to Levy's alleged breach of his NCA, the allegations are duplicative of FIS's breach of contract cause of action, thus, warranting dismissal. Although FIS attempts, in its opposition to summary judgment, to introduce allegations of additional wrongdoing to support its unfair competition cause of action, the Court declines to consider these allegations, as they are not pleaded in the Third Amended Complaint and considering them, at this stage, would be akin to allowing an amendment to the pleading.

## RECOMMENDATION

For the reasons set forth above, I recommend that your Honor grant the defendants' motion for summary judgment, Docket Entry No. 125, in its entirety.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, 40

Centre Street, Room 540, New York, New York 10007.  Any requests for an extension of time for

filing objections must be directed to Judge Kaplan.  FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn, 474 U.S. 140, 145, 106 S.Ct. 466, 470

(1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York                       Respectfully submitted,
        August 11, 2011

                                                 Kevin Nathaniel Fox
                                                 _____
                                                 KEVIN NATHANIEL FOX
                                                 UNITED STATES MAGISTRATE JUDGE