ORIGINALLY FILED UNDER SEAL AS DOCKET NO.: 147

Mark H. Moore
Lawrence Brocchini
REAVIS PARENT LEHRER LLP
41 Madison Avenue
New York, New York 10010
Tel.: (212) 763-4100
Fax: (212) 763-4141
mmoore@rpl-law.com
lbrocchini@rpl-law.com

*Attorneys for Plaintiff Fidelity Information Services, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FIDELITY INFORMATION SERVICES, INC.,<br><br>                     Plaintiff,<br><br>          v.<br><br>DEBTDOMAIN GLMS PTE LTD., DEBTDOMAIN (USA) INC., DAVID LEVY and SETH ROTHMAN,<br><br>                 Defendants. | ECF Case<br><br>Case No. 09-cv-07589 (LAK) (KNF) |

**OBJECTION OF PLAINTIFF**
**FIDELITY INFORMATION SERVICES, INC.**
**TO REPORT AND RECOMMENDATION OF**
**MAGISTRATE JUDGE KEVIN NATHANIEL FOX**

Table of Contents

Page

Table of Authorities ............................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................ 5

THE REPORT SHOULD BE REJECTED ........................................................................... 5

I.     THE REPORT WRONGLY DISMISSES FIS' COPYRIGHT CLAIMS
       BASED ON ITS MISTAKEN VIEW THAT FIS IS NOT ASSERTING
       INFRIGEMENT OF A PRE-EXISTING COPYRIGHTED WORK ..................... 6

       A.     The Report Rests on the Erroneous Conclusion –
              Advanced by Defendants Only in Reply – That FIS is not Asserting
              Infringement of a Work Pre-Dating Defendants' Infringement .................. 6

       B.     Contrary To The Report, FIS' Copyright Claim
              Alleges Infringement Of Copyrighted Material
              Completed In 2005, And Pre-Dating Defendants' Infringement ............... 10

              1.     FIS Copyright Certificate Of
                     Registration Covering A 2005 Version Of SyndTrak .................... 10

              2.     FIS Did Allege Infringement Of The 2005
                     SyndTrak Version 3.1.222 In Its Operative Complaint ................. 12

              3.     The Experts Agree That The 2005 And 2009 Versions
                     Are Equivalent For Purposes Of Copyright Analysis,
                     And, Accordingly, FIS Proffered Infringement Evidence ............. 13

II.    THE REPORT IMPROPERLY RECOMMENDS
       DISMISSAL OF FIS' UNFAIR COMPETITION CLAIMS ................................ 16

       A.     FIS Put Defendants On Notice Of The Newly
              Discovered Facts Supporting Its Unfair Competition Claim ..................... 17

       B.     The Report Improperly Dismissed FIS' Unfair Competition Claim ......... 18

CONCLUSION ................................................................................................................... 21

Table of Authorities

Page

Cases

*Booking v. General Star Management Co.,*
    254 F. 3d 414 (2d Cir. 2001) ..............................................................................8, 11

*Beverage Mktg. USA, Inc. v. South Beach Beverage Co., Inc.,*
    20 A.D.3d 439, 799 N.Y.S.2d 242 (2 Dep't 2005)......................................19 n.11

*Cardiocall, Inc. v. Serling,*
    492 F. Supp. 2d 139 (E.D.N.Y. 2007) ...........................................................19 n.11

*CBS Corp. v. Dumsday,*
    268 A.D.2d 350, 702 N.Y.S.2d 248 (1st Dep't 2000) ...................................19 n.11

*Design Strategy Corp. v. Knack Systems, LLC,*
    2007 WL 4562926 (S.D.N.Y. 2007).............................................................19 n.11

*Electrolux Corp. v. Val-Worth, Inc.,*
    6 N.Y.2d 556, 190 N.Y.S.2d 977 (1959)...............................................................17

*Ernst Haas Studio, Inc. v. Palm Press, Inc.,*
    164 F.3d 110 (2d Cir. 1999) ..................................................................................8

*Export–Import Bank of the United States v. Hi–Films S.A. de C.V.,*
    No. 09 Civ. 3573, 2010 WL 3743826 (S.D.N.Y. September 24, 2010)..................8

*Fonar Corp. v. Domenick,*
    105 F.3d 99 (2d Cir. 1997) ...................................................................................10

*Ingenuit, Ltd. v. Harriff,*
    33 A.D.3d 589, 822 N.Y.S.2d 301 (2d Dep't 2006)......................................19 n.11

*LinkCo, Inc. v. Fujitsu Ltd.,*
    230 F. Supp. 2d 492 (S.D.N.Y. 2002) ..................................................................17

*National Basketball Ass'n v. Motorola, Inc.,*
    105 F.3d 841 (2d Cir. 1997) ................................................................................17

*Nelson v. Smith,*
    618 F. Supp. 1186 (S.D.N.Y. 1985) .......................................................................6

*Oskar Sys. LLC v. Club Speed, Inc.,*
    745 F.Supp.2d 1155 (C.D. Cal. 2010) ....................................................................7

ii

*Perez–Rubio v. Wykcoff,*
 718 F. Supp. 217 (S.D.N.Y. 1989) ...........................................................................5

*Phoenix Ins. Co. v. APF Fire Protection, Inc.,*
 No. 08 Civ. 7935 (LBS) (RLE), 08 Civ. 8728
 (LBS) (RLE), 2011 WL 2802930 (S.D.N.Y. July 14, 2011)...................................8

*Roy Export Co. Establishment of Vaduz,*
 *Liechtenstein v. Columbia Broad. Sys., Inc.,*
 672 F.2d 1095 (2d Cir. 1982) ...............................................................................17

*Streetwise Maps, Inc. v. VanDam, Inc.,*
 159 F.3d 739 (2d Cir. 1998) ...................................................................................6

*Sea Tow Services, International, Inc. v. Pontin,*
 607 F. Supp. 2d 378 (E.D.N.Y. 2009) ..........................................................19 n.11

*United States v. Raddatz,*
 447 U.S. 667 (1980)..................................................................................................5

## Statutes and Rules

17 U.S.C. § 410(c) ...................................................................................................10, 11

28 U.S.C. § 636(b)(1) ...........................................................................................1, 5, 6, 15

Fed. R. Civ. P. 15(b) .......................................................................................................19

Fed. R. Civ. P. 72(b) ..........................................................................................1, 5, 6, 12

## Other Authority

H.R. Rep. No. 94-1609 (1976)............................................................................................5

Notes of Committee on the Judiciary, House Report No. 94-1476 ...................................11

Plaintiff, Fidelity Information Services, Inc. ("FIS" or "Plaintiff"), submits this objection, pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), to the Report and Recommendation of Magistrate Judge Kenneth Nathaniel Fox, dated August 11, 2011 ("Report," Docket Entry ("Dkt. No.") 141), recommending that this Court grant the motion of Defendants Debtdomain GLMS Pte Ltd. ("GLMS"), Debtdomain (USA) Inc. ("Debtdomain USA," and, together with GLMS, "Debtdomain"), David Levy and Seth Rothman for summary judgment ("Defendants' Motion") (Dkt. 125).[1]

## PRELIMINARY STATEMENT

FIS brought this action for copyright infringement and unfair competition to redress Defendants' unauthorized and unlawful copying – confirmed through discovery – of valuable elements of FIS' SyndTrak front-office loan-syndication computer software, including, in particular, its unique and distinctive main screen display and the selection, coordination, and arrangement of data fields thereon. The Report's recommendation that summary judgment should be entered dismissing FIS' copyright and unfair competition claims should be rejected, as it rests on manifestly incorrect "facts" concerning FIS' copyright claim, and ignores substantial evidence supporting the unfair competition claim as to which Defendants have long had notice.[2]

The Report's recommendation that FIS' Copyright Act claim should be dismissed

---

[1] Simultaneous with this filing, FIS is filing an appeal from Magistrate Judge Fox's August 11, 2011 Memorandum and Order (Dkt. No. 142) denying FIS' motion for leave to file an amended complaint to assert breach of contract, tortious interference, and misappropriation of trade secret claims against the Defendants based on evidence developed during the course of discovery in this action. A copy of the Report is Exhibit 1 to the August 23, 2011 Declaration of Lawrence Brocchini ("Brocchini Decl.").

[2] The Report also recommends dismissal of FIS' contract claim against David Levy based on his pre-November 2007 contractual non-compete obligations, as alleged in the Third Amended Complaint. While FIS disagrees with that determination, it does not object to that aspect of the Report.

is in error because it depends on a demonstrably untrue factual predicate:  that FIS
purportedly relies solely on a 2009 version of its SyndTrak software created after
Debtdomain's infringement began in 2008. That is wrong and contrary to the undisputed
factual record evidence that FIS (1) owns a copyright on a 2005 version of SyndTrak –
version 3.1.222 (*see* United States Copyright Certificate of Registration TX 6-943-321
for SyndTrak 3.1.222 ("3.1.222 Registration"), Exhibit 1 to Third Amended Complaint
("TAC"), which is Exhibit 1 to the Declaration of Scott S. Balber in Support of
Defendants' Motion for Summary Judgment ("Balber Decl.")), (2) asserts Defendants'
infringement of the copyrighted version in its Complaint (*see* TAC ¶ 34), and (3)
supports that infringement claim on summary judgment with record evidence.

  *First*, prior to filing its lawsuit, FIS obtained copyright registrations for two
versions of the SyndTrak software:  (1) version 3.1.222, *completed in 2005*; and (2)
version 3.269, completed in 2009.  The 3.1.222 copyright registration certificate is, as a
matter of law, *prima facie* evidence of the 2005 completion date.  Since Defendants do
not even attempt to (nor could they) rebut the presumption of a 2005 completion date for
version 3.1.222, that completion date is established conclusively.    (*See* 3.1.222
Registration, Exhibit 1 to TAC, Balber Decl. Exhibit 1; TAC ¶ 34.)

  *Second*, FIS' complaint does allege Debtdomain's infringement of the 2005
version 3.1.222 of SyndTrak.  (TAC ¶ 34.)   Moreover – contrary to Defendants'
suggestion that version 3.1.222 does not exist or was destroyed – both a working copy of
the 3.1.222 software and a hard copy of the main screen at issue were produced by FIS
and were the subject of additional discovery and expert reports. (*See* SyndTrak version
3.1.222 screen shot with production number F0002935, also marked as Elkayam

Deposition Exhibit 5, Brocchini Decl. Exhibit 2; *see also* Expert Report of Charles L. Mauro CHFP ("Mauro Report"), Moore Contempt Decl. Exh. 51, at ¶ 13, 16 (Moore Contempt Decl. is part of Moore S.J. Decl. Exh. B);[3] Mauro Report Exhibit C, List of Materials Considered and Relied upon by Charles L. Mauro, Moore S.J. Decl. Exh. E; Expert Report of Benjamin B. Mr. Bederson, dated June 17, 2010, ("Bederson Report"), Moore S.J. Decl. Exh. F, ¶ 18, 57, 80 (stating that his report preparation included running SyndTrak versions 3.1.222 and 3.269 on a virtual machine and that his analysis regarding version 3.269 applied equally to version 3.1.222).)

*Third*, FIS proffered evidence on this motion – in the form of an expert report and analysis – that Defendants' software infringes the 2005 version of SyndTrak's main screen, as well as the analytically identical 2009 version. In particular, FIS' expert, Charles Mauro, states that his expert opinions as to copyright infringement would hold true for both the 2005 and 2009 versions of the software, because they are identical for the purposes of his comparison. (Mauro Report ¶¶ 13, 16; *see also* August 23, 2011 Declaration of Charles L. Mauro submitted in connection with this objection ("Mauro Decl."), ¶¶ 3-6.) Thus, it was only to avoid unnecessary repetition that Mauro did not repeat his analysis *in hac verba* for the 2005 version, but rather repeated it simply by reference. (*See* Mauro Decl. ¶¶ 3-6.)) Defendants' expert used the identical shorthand, as he analyzed the 2005 SyndTrak version, agreed with Mauro that it was identical with

---

[3] Referenced exhibits are appended to the November 1, 2010 Declaration of Mark H. Moore in Opposition to Defendants' Motion for Summary Judgment ("Moore S.J. Decl."). "Moore Contempt Decl." refers to the September 22, 2010 Declaration of Mark H. Moore in support of FIS' motion for contempt, which, together with its exhibits, is expressly incorporated by reference herein. (Dkt. 116 (under seal).) The Moore Contempt Decl. is part of Moore S.J. Decl. Exh. B. "CDF" refers to Fidelity Information Services, Inc.'s Counter-Statement Of Disputed Facts, submitted by FIS pursuant Local Civil Rule 56.1(b) in opposition to Plaintiffs' motion for summary judgment. For the Court's convenience, a full copy of each of these documents, incorporated herein by reference, is being provided along with this objection.

the 2009 SyndTrak main screen for copyright analysis purposes, but only discussed version 3.269. (*See* Bederson Report, ¶¶ 57, 80.) Comparison of the actual screen shots of the 2005 and 2009 versions validates the experts' opinions that the software is identical for infringement analysis purposes.

Ultimately, FIS owns a copyrighted version of SyndTrak pre-dating Defendants' infringement commencing in 2008 and continuing to this day, and has asserted and supported a claim for infringement of that pre-existing version. The Report – led down an erroneous path by Defendants' misleading contentions – simply has the facts wrong. Under a *de novo* review that obvious error should easily be rectified, and, with that fallacy removed, the Report must be rejected.[4]

The Report also improperly recommends dismissal of FIS' unfair competition claim. While that claim, as pled in FIS' operative complaint, had paralleled FIS' breach of contract claim against David Levy (a former FIS executive and current Debtdomain co-CEO), during the course of the litigation, FIS discovered additional evidence to support it – namely, the egregious violation of Seth Rothman's (also a former FIS employee now employed by Debtdomain) FIS noncompetition agreement and his and David Levy's violations of their confidentiality agreements, all of which allowed Debtdomain to compete unfairly against FIS. (Rothman's violations, aided and abetted by Levy and Debtdomain, are all the more outrageous for violating the order of Judge

---

[4] In their moving brief, Defendants mounted several attacks on FIS' copyright claims, including challenges that (1) FIS' SyndTrak screen was not properly registered; (2) the SyndTrak screen was not protectable under copyright; and (3) Debtdomain's screen does not infringe the SyndTrak screen. *See* Defendants' Memorandum Of Law In Support Of Motion For Summary Judgment ("Mov. Mem.") at 10-20.) The Report did not address any of the arguments raised by Defendants in their moving papers as to the sufficiency of FIS' copyright claims, all of which were refuted by FIS. To the extent that the Court is inclined to consider these arguments, for the reasons set forth in FIS' opposition papers, Defendants' arguments should be rejected. For the Court's convenience, a courtesy copy of FIS' original opposition papers is being provided to Chambers at this time.

Koeltl issued in a prior lawsuit.)  As detailed below, FIS put Defendants on notice of its intent to rely on this additional information in support of its claim in its interrogatory responses dated July 1, 2010.  Defendants have now long known these facts underlying FIS' unfair competition claim, and there is no legitimate reason – and the Report offers none – to preclude FIS from asserting them.  Indeed, since FIS asserts these same claims as affirmative defenses to defendants' counterclaims, as a practical matter, the Court will have to hear FIS' unfair competition claims whether or not FIS is permitted to assert them as part of its case-in-chief.

## ARGUMENT

## THE REPORT SHOULD BE REJECTED

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 674–75 (1980); *Perez–Rubio v. Wykcoff,* 718 F. Supp. 217, 227 (S.D.N.Y. 1989).  That *de novo* determination "permit[s] whatever reliance a district court, in the exercise of sound judicial discretion, [chooses] to place on a magistrate's proposed findings and recommendations." *Raddatz,* 447 U.S. at 676 (citation omitted).  The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations."  Fed. R. Civ. P. 72(b).

"Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *Raddatz,* 447 U.S. at 674–75 (citing H.R. Rep. No. 94-1609, p. 3 (1976)).  The district

5

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c). In any event, the Court must "arrive at its own, independent conclusions" regarding those portions to which objections were made and "exercise … sound judicial discretion with respect to whether reliance should be placed on the [magistrate judge's] finding." *Nelson v. Smith,* 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (internal quotations omitted).

As discussed further below, this Court should reject the Report and use its power of *de novo* review to correct the manifest error on which the Report is predicated.

## I. THE REPORT WRONGLY DISMISSES FIS' COPYRIGHT CLAIMS BASED ON ITS MISTAKEN VIEW THAT FIS IS NOT ASSERTING INFRIGEMENT OF A PRE-EXISTING COPYRIGHTED WORK

The Report rejects FIS' Copyright Act claims on a single narrow ground – that FIS' copyright claims were deficient because FIS did not allege infringement of a pre-existing version of SyndTrak by Defendants. That supposition, it turns out, is completely mistaken, and, once the fallacy is removed, the Report's conclusion regarding FIS' copyright claim fails.

### A. The Report Rests on the Erroneous Conclusion – Advanced by Defendants Only in Reply – That FIS is not Asserting Infringement of a Work Pre-Dating Defendants' Infringement

The Report initially notes correctly (but then proceeds to ignore) that prior to filing its lawsuit, FIS filed two certificates of registration for the SyndTrak software: the first, for version 3.1.222, completed in 2005, and the second, for version 3.269 of the software, completed in 2009. (Report at 2.) The Report also properly acknowledges that under *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998), a copyright for a "derivative" work, which is based upon one or more preexisting works, may protect

6

preexisting versions of the work, as long as the claimant is the author of both works. (Report at 5.) The Report also gets it right that FIS contends that Debtdomain's infringement commenced some time in 2008, and continues to the present day. (Report at 3.)

From there, the Report incorrectly states that FIS purportedly alleges only infringement of the *2009* SyndTrak work, which is not the case (as discussed below). (Report at 6.) The Report then applies this erroneous factual deduction that FIS is only asserting a post-infringement work, and under the reasoning of a lone district court decision, *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155 (C.D. Cal. 2010), concludes that FIS may not rely upon the copyright registration of a derivative work when the derivative work was created *after* the alleged copyright infringement, because to allow otherwise would open the door to potential fraud. (Report at 6.) Ultimately, the Report concludes that "[a]bsent evidence that the screen display generated by SyndTrak 3.269 is a preexisting work, FIS does not have a valid copyright upon which it may bring suit." (Report at 7.) As discussed below, however, that focus on SyndTrak version 3.269 completely overlooks the fact that FIS has a valid copyright covering its 2005, pre-existing, SyndTrak version 3.1.222, which it asserts Defendants infringed. Thus, *Oskar* and its reasoning are inapplicable, as there is no potential of fraud here given FIS' copyrighted, pre-existing version 3.1.222.

Significantly, the Report's rationale for dismissing FIS' copyright claim mimics an argument Defendants made only for the first on reply. Defendants' moving papers nowhere argue, suggest or remotely imply that FIS' copyright claims were deficient because FIS was not suing on copyrighted materials created prior to Debtdomain's

7

alleged infringement commencing in 2008, and, therefore, FIS had no reason to brief the issue. (*See generally* Mov. Mem. (never making that argument).)

The Report should have declined to consider this argument raised for the first time in Defendants' reply memorandum, and, indeed this Court should reject the Report since it improperly relied on such a belated argument in a reply brief. *See Export–Import Bank of the United States v. Hi–Films S.A. de C.V.,* No. 09 Civ. 3573, 2010 WL 3743826, at *11 n.4 (S.D.N.Y. September 24, 2010) (citing authority that "[N]ew arguments may not be made in a reply brief," and declining to consider such argument) (quoting in part *Ernst Haas Studio, Inc. v. Palm Press, Inc.,* 164 F.3d 110, 112 (2d Cir. 1999)); *see also Phoenix Ins. Co. v. APF Fire Protection, Inc.*, No. 08 Civ. 7935 (LBS) (RLE), 08 Civ. 8728 (LBS) (RLE), 2011 WL 2802930, at * 1 (S.D.N.Y. July 14, 2011) (applying "general rule set forth in case law" that "it is improper practice to raise arguments in the first instance in a reply brief" to affirm magistrate judge's refusal to consider argument first raised on reply) (citation omitted).

At a very minimum, FIS should have been given an opportunity to reply – even at oral argument, which was not held in this case – before dismissing a claim based on a newly-raised argument. *See Booking v. General Star Management Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (refusing to make new law to say that district court could have discretion to consider arguments raised for the first time on reply, but suggesting in *dicta* that such discretion may exist, *provided* that the trial court "order[s] additional briefing on the argument pressed in the reply brief" or orders additional oral argument). Defendants should not be rewarded for their tactical decision to save this argument for reply; and FIS should not face dismissal of its claims based on an argument it had no

8

chance to rebut. Fairness dictates no less, and this Court must redress that unfairness by rejecting the Report.

Further, in making its belated and false copyright argument, Defendants not only mislead the court by stating that FIS did not allege infringement of a pre-existing work, they baselessly "speculated" that perhaps FIS had "proffered" only the main screen from SyndTrak version 3.269 (an inaccurate claim), and not the earlier 3.1.222 version, "because prior versions of the screen either did not exist or were destroyed." (Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment at 1 n.1.) This was not the case. FIS had produced a working copy of SyndTrak version 3.1.222 that Defendants' expert ran and analyzed. (*See* Bederson Report, Moore S.J. Decl. Exh. F, at ¶¶ 18.) FIS had produced a screenshot of the main screen of SyndTrak version 3.1.222, which Defendants' own counsel questioned at least one FIS witness about extensively. (*See* SyndTrak version 3.1.222 screen shot with production number F0002935, Elkayam Deposition Exhibit 5, Brocchini Decl. Exhibit 2; *see also* excerpts of March 18, 2010 Transcript of the Deposition of Ariel Elkayam, Moore S.J. Decl. Exh. H, at 18-19 (under questioning from Defendants' counsel, authenticating Elkayam Deposition Exhibit 5, SyndTrak's Main Screen Shot, production numbers F 00002935.) In short, SyndTrak version 3.1.222 had not been destroyed.

Additionally, as discussed in detail below, both parties and their experts expressly limited the detailed discussion of their copyright analysis to the main screen of version 3.269. This is because version 3.1.222 is analytically identical to version 3.269, and there was no need to repeat the analysis verbatim for version 3.1.222 since both experts stated that the same analysis applied to version 3.1.222. Accordingly, there can

9

be no doubt that FIS asserted infringement of a 2005 work which existed well before the October 2008 infringement by Defendants commenced.

**B.      Contrary To The Report, FIS' Copyright Claim
         Alleges Infringement Of Copyrighted Material
         Completed In 2005, And Pre-Dating Defendants' Infringement**

As discussed further below, because – contrary to the Report's conclusion – FIS asserts a claim for infringement of a valid copyright in a work pre-dating Defendants' infringement, FIS' copyright claim is valid and the Report's recommendation of summary judgment on that claim should be rejected.

**1.      FIS Copyright Certificate Of
         Registration Covering A 2005 Version Of SyndTrak**

The 2005 SyndTrak version 3.1.222 is the subject of a valid and subsisting U.S. copyright registration. (CDF ¶ 3.) Before commencing this action in August 2009, FIS registered the SyndTrak programs – SyndTrak 3.1.222 and SyndTrak 3.269 – with the U.S. Copyright office. (CDF ¶ 3.) Those copyright registrations state that the new material included in the registration is a "computer program," and that FIS owns the copyright in previous versions of the program. (CDF ¶ 4.) Significantly, as the Report noted (Report at 2) but then largely ignored, the registration certificate for SyndTrak 3.1.222, identifies the "Year of Completion" as "2005," and the "Date of 1st Publication" as August 17, 2005. (*See* Exhibit 1 to the TAC, Balber Decl. Exhibit 1.)

The SyndTrak 3.1.222 certificate of registration, appended as Exhibit 1 to Fidelity's TAC (Balber Decl. Exhibit 1), "constitute[s] *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir. 1997)). Thus, FIS' SyndTrak version 3.1.222 copyright certificate establishes the validity of FIS' stated 2005

10

Case 1:09-cv-07589-LAK-KNF  Document 187  Filed 10/24/11  Page 15 of 25

completion date. *Id.* Since, Defendants have offered no evidence rebutting or challenging the presumption of FIS' 2005 completion date – because they cannot – that date is conclusively established. *See* 17 U.S.C. § 410(c); *see also* Notes of Committee on the Judiciary, House Report No. 94-1476 ("endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the copyright does not deprive the defendant in an infringement suit of any rights; it merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.").

Although no further proof beyond the registration certificate is needed, to absolutely remove any doubt, the 2005 completion date set forth in the 3.1.22 copyright registration certificate is corroborated by testimony proffered in support of this objection. Specifically, Eric Cetron, formerly the software development manager for front-office technology for FIS and now implementation manager, who prepared the source code deposit that accompanied the SyndTrak 3.1.222 registration, testifies that version 3.1.222 of the SyndTrak software at issue was, according to FIS' business records maintained in the regular course of its business, completed in 2005, as stated in the 3.1.222 Registration. (*See* August 23, 2011 Declaration of Eric Cetron ("Cetron Decl.") ¶¶ 1-3, 4, 5; screen shot, Cetron Decl. Exh. A; *see also* Plaintiff Fidelity Information Services, Inc.'s Responses To Defendants' Second Set of Interrogatories (Nos. 11-25), Moore S.J. Decl. Exh. N, at 4 (Response to Interrogatory No. 11, stating that SyndTrak "build release 3.1.222 was created on or around August 17, 2005").) Although such

11

corroboration is unnecessary given the unrebutted statutory presumption of a 2005 completion date, this Court is, of course, free to, and should, consider such additional information, particularly since FIS was given no opportunity to respond when Defendants made this motion only on reply. *See* Fed. R. Civ. P. 72(b); *Booking,* 254 F.3d at 418 (without deciding if district courts can ever entertain arguments made only on reply, noting that before that could even be considered, the non-asserting party would need to be given a chance to rebut).

### 2.   FIS Did Allege Infringement Of The 2005 SyndTrak Version 3.1.222 In Its Operative Complaint

Next, the Report is incorrect in concluding that FIS asserts infringement of only version 3.269, not version 3.1.222. Notably, the Report initially recognizes (quoting the complaint language discussed at length below) that FIS' infringement claim covers both versions. (*See* Report at 3). Nevertheless, the Report proceeds to disregard that allegation. To be sure, there is no dispute that FIS has alleged in its complaint that Defendants infringed SyndTrak version 3.1.222 "commencing after the creation of" SyndTrak:

> 34. Defendants, *commencing after the creation of Fidelity's SyndTrak Software,* and without Fidelity's authorization or consent, have produced, distributed, displayed, promoted, offered for license or sale, and licensed or sold the Syndication Software, which, upon information and belief, is copied and/or derived from and substantially similar to the user interface and screen display of the SyndTrak Software, as registered in the SyndTrak Registrations, thereby infringing Plaintiff's exclusive rights in the SyndTrak Software in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

(TAC (Balber Decl. Exh. 1) ¶ 34 (emphasis added).)[5]

_____

[5] Earlier, the complaint alleged FIS' ownership of the valid copyright in version 3.1.222 (U.S. Copyright Registration TX 6-943-321), and defined "SyndTrak Registration" to include that registration:

12

**3.     The Experts Agree That The 2005 And 2009 Versions
Are Equivalent For Purposes Of Copyright Analysis,
And, Accordingly, FIS Proffered Infringement Evidence**

Next, the Report – in accepting Defendants' false contention that FIS had not claimed infringement of a pre-existing work because only a screen shot of version 3.269 was "proffered" – ignored the record testimony of both experts in this case that version 3.269 and version 3.1.222 were identical for purposes of infringement analysis, and that, therefore, their analysis of version 3.269 also applied to version 3.1.222.

Specifically, FIS' expert, Mr. Mauro, after testifying that he had reviewed both SyndTrak version 3.1.222 and version 3.269 (Mauro Report, Moore Contempt Decl. Exh. 51, at ¶ 13; Mauro Decl. ¶¶ 3-6; *see also* Mauro Report Exhibit C, List of Materials Considered and Relied Upon by Charles L. Mauro, Moore S.J. Decl. Exh. E; Mauro Report Exh. I, United States Copyright TX 6-943-321 for SyndTrak 3.1.222), testified that although his testimony was limited to version 3.269, his analysis and "conclusions would hold true for version 3.1.222" as well:

> 16.     A list of the materials I considered and relied on in forming my opinions is attached as Exhibit C. In general, in forming my opinions in this matter, I reviewed the third amended complaint and defendant Debtdomain (USA) Inc.'s answer in this case, the deposition transcript of Ariel Elkayam, and the screen captures of the two primary user interface screen involved in this litigation. I have also reviewed the actual SyndTrak software versions 3.1.222 and 3.269 installed on a clean PC running under a Virtual Machine program ("VM"). Although for the comparisons below I used version 3.269 of SyndTrak, my conclusions would also hold true for version 3.1.222.

---

17.     The SyndTrak Software is an original work of authorship for which copyright protection exists under the Copyright Act. [FIS, defined therein as "Fidelity"] owns alls rights under copyright in the SyndTrak Software. [FIS] also owns U.S. Copyright Registration No. TX 6-943-321 for one version of the SyndTrak Software, ACBS SyndTrak 3.1.222, a copy of which is attached hereto as Exhibit 1, and owns U.S. Copyright Registration No. TX 6-943-322 for a later version of the SyndTrak Software, ACBS SyndTrak 3.269, a copy of which is attached hereto as Exhibit 2 (collectively, the "SyndTrak Registrations").

(TAC ¶ 17.)

13

(Mauro Report ¶ 16; *see also* Mauro Decl. ¶¶ 5 (conclusions for 3.269 hold true for version 3.1.222); excerpts of March 18, 2010 Transcript of the Deposition of Ariel Elkayam, Moore S.J. Decl. Exh. H, at 18-19 (Elkayam being shown main page of SyndTrak version 3.1.222 (Elkayam Dep. Exh. 5), version 3.269, and another version and testifying that all these versions are, in his view, very similar).)[6] Thus, it was purely for the sake of convenience and brevity that Mr. Mauro focused only on the version 3.269 and appended only a screen shot of version 3.269 to his report. His conclusion that Debtdomain infringes version 3.269 also "hold[s] true for version 3.1.222," and accordingly, FIS has proffered evidence that Defendants infringed the pre-existing, 2005 version 3.1.222.

Similarly, Debtdomain's software expert, Benjamin B. Bederson, testified that he had reviewed *both version 3.269 and version 3.1.222* (again rebutting Defendants' misleading claim that version 3.1.222 was destroyed). (*See* Bederson Report, Moore S.J. Decl. Exh. F, at ¶ 18.) (stating that his report preparation included running SyndTrak versions 3.1.222 and 3.269 on a virtual machine.) Like Mr. Mauro, Mr. Bederson stated that there were no differences between and among the two versions that would impact his copyright analysis and, therefore, his "conclusions regarding versions 3.269 also hold true for version 3.1.222":

> 57. Like Mr. Mauro, I will primarily focus my analysis on Syndtrak [sic] version 3.269 and the new Debtdomain software. I believe this approach is fair because it brings the distinctions between Mr. Mauro's analysis and mine into clearer focus and because (apparently like Mr. Mauro) I am currently unaware of differences between the Syndtrak [sic] versions which would change my analysis.

---

[6] Elkayam is FIS' Head of Product Management for Front Office Products, which includes SyndTrak, and an employee of FIS and CDS, its predecessor-in-interest, since approximately 1997. (*See* October 29, 2010 Declaration of Ariel Elkayam, Moore S.J. Decl. Exh. A, ¶¶ 1, 2.)

14

Thus, in my opinion, my conclusions regarding versions 3.269 also hold true for version 3.1.222.

(Bederson Report at ¶ 57; *see also id.* at ¶ 80 (again noting that Mr. Bederson's analysis relates to "the full versions of Syndtrak [sic] 222 and 269 that [he] was supplied with").)

Mr. Mauro's testimony regarding the interchangeability of version 3.1.222 and version 3.269 for infringement analysis, corroborated by Mr. Bederson's identical opinion, along with FIS' 3.1.222 copyright registration establishing conclusively the 2005 completion date of that version, on their own require that the Report be rejected, since it is undisputed that FIS alleges Defendants' infringement of pre-existing material. All of these materials were presented to the magistrate judge as part of FIS' opposition to the summary judgment motion.[7]

While that should be the end of the analysis, to remove any doubt, FIS submits a copy of the main screen generated from SyndTrak version 3.1.222, completed in 2005. (Brocchini Decl. Exh. 2 (main screen of SyndTrak version 3.1.222, produced in this litigation as F0002935 and which was also marked as Exhibit 5 of the Elkayam Deposition). As the header on F0002935 states, this is the main screen generated by SyndTrak version 3.1.222, completed in 2005. (Brocchini Decl. Exh. 2.) Consistent with the testimony of Messrs. Mauro and Bederman, a comparison of the SyndTrak 3.1.222 version main screen and the main screen of version 3.269 on which the experts based their testimony, confirms their analytic similarity. (Compare Brocchini Decl. Exh. 2 (3.1.222 main screen) with Mauro Report Exhibit E (SyndTrak version 3.269 main screen) (part of Moore S.J. Decl. Exh. E).)

---

[7] *See* Mauro Report, Moore Contempt Decl. Exh. 51 (Moore Contempt Decl. is part of Moore S.J. Decl. Exh. B); Bederson Report, Moore S.J. Decl. Exh. F; SyndTrak 3.1.222 copyright registration (No. TX 6-943-321), part of Balber Decl. Exh. 1 (FIS' Third Amendment Complaint, Exh. 1); Referenced Excerpts of Elkayam Tr., Moore S.J. Decl. Exh. H.

15

Thus, there is no doubt that FIS asserts infringement of the pre-existing SyndTrak version 3.1.222 (*see* TAC (Balber Decl. Exh. 1) ¶ 34; TAC Exhibit 1 (3.1.222 Copyright Registration)); that *Oskar*, therefore, is completely inapposite; and that the Report's recommendation regarding FIS' copyright claim should be rejected.

## II.     THE REPORT IMPROPERLY RECOMMENDS DISMISSAL OF FIS' UNFAIR COMPETITION CLAIMS

In its Third Amended Complaint, FIS alleges that Defendants engaged in unfair competition against FIS.     (TAC, Balber Decl. Exh. 1, Second Claim for Relief.) Defendants moved for summary judgment against the claim on the narrow ground that it is duplicative of FIS' Copyright Act claim and its breach of the noncompetion agreement with Levy,[8] but ignored the additional facts adduced in discovery since the filing of the TAC, which all support FIS' claim.[9]  The Report rejects those additional facts out of hand and with no analysis, as allowing a purported impermissible amendment to the pleadings. (Report at 9.)  However, even accepting that characterization, the Report gives no legitimate reason – no undue delay and certainly no prejudice – for not permitting FIS to assert these facts only learned during discovery and as to which FIS promptly put Defendants on notice.

---

[8]  The Report finds that FIS' unfair competition claim is precluded (1) on copyright preemption grounds to the extent that it might mirror FIS' copyright claim; and (2) to the extent that it is duplicative of FIS' breach of contract claim against Levy based on his pre-November 2007 conduct.  (Report at 8-9.) However, as set forth in FIS' memorandum in opposition to the motion for summary judgment, and as discussed further below, FIS' unfair competition claim is now supported by additional misconduct uncovered during discovery.

[9]  The detailed facts underlying FIS' unfair competition claim, including key additional evidence adduced after July 1, 2010, are set forth in the Moore Contempt Declaration, which, including its exhibits, is expressly incorporated by reference herein. (Dkt. No. 116 (under seal).)  The evidence is summarized in FIS' memorandum of law in support of its contempt motion.  *Id.*  Defendants do not take issue with any of the facts set forth in Defendants' response to Interrogatory No. 16, or with the facts summarized in the Moore Contempt Declaration.  Accordingly, FIS' unfair competition claim was clearly supported by undisputed and unrefuted factual evidence, and accordingly, summary judgment dismissing that claim was inappropriate.

16

**A.    FIS Put Defendants On Notice Of The Newly
       Discovered Facts Supporting Its Unfair Competition Claim**

Under New York common law, unfair competition is a broad and flexible claim,

which allows a court to reach virtually any invasion of a party's commercial property

rights. *See National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir.

1997); *LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492 (S.D.N.Y. 2002)(same); *Roy

Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,* 672 F.2d

1095, 1105 (2d Cir. 1982) (same); *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556,

568, 190 N.Y.S.2d 977 (1959) ("The incalculable variety of illegal commercial practices

denominated as unfair competition is proportionate to the unlimited ingenuity that

overreaching entrepreneurs and trade pirates put to use")(citations omitted).

Following the filing of the TAC and following substantial opposition and foot-

dragging by Defendants, FIS uncovered substantial new evidence supporting its unfair

competition claim.  By July 1, 2010, FIS had learned at least some of the new facts

supporting its claim.      That day, FIS responded to Defendants' second set of

interrogatories, including Interrogatory No. 16, which requested that FIS "[s]tate any

factual elements of Plaintiff's state [law] unfair competition claim that make it different

from its copyright infringement claim."  (CDF ¶ 158.)

The response stated, in sum, that Rothman – the former SyndTrak chief developer

and product manager – breached a non-competition agreement with FIS,  so ordered by

this Court, in a prior action against Rothman *Fidelity National Information Services, Inc.

v. Rothman*, No. 07-CV-07756 (S.D.N.Y.) ("Rothman I").   Rothman intentionally

breached the agreement by working for Defendants from January through September 11,

2008 to help develop a competitive Debtdomain product, including, for example, (1)

17

performing due diligence on the Debtdomain product in connection with a possible investment in Debtdomain by David Levy; (2) making recommendations to Debtdomain on software platforms, data transfers and software design; and (3) participating in a key internal marketing conference. This work was all conducted during a period covered by his non-compete, and enabled Debtdomain to establish itself as a major competitor to FIS. Further, this new evidence shows that both Levy and Rothman violated the terms of their confidentiality obligations to FIS by using their intimate knowledge of SyndTrak, its operations, and its customers to develop and market the competing Debtdomain product. These breaches resulted from the encouragement and active inducement of Debtdomain, which stood to gain the most from them. (CDF ¶ 159.) Defendants, therefore, were fully on notice that FIS intended to rely upon these newly discovered facts to support its unfair competition claim.[10] As a result, Defendants cannot cite to any possible prejudice as a result of FIS' position, as it could have taken whatever steps it needed, including any additional discovery, after learning FIS' position.

## B.     The Report Improperly Dismissed FIS' Unfair Competition Claim

The Report never suggests that FIS' factual allegations – as to which Defendants were on notice since at least July 1, 2010 – were in anyway insufficient to sustain a claim

---

[10] On September 27, 2010, having obtained more complete discovery, FIS moved for leave to file a Fourth Amended Complaint, in order to provide detailed allegations and in order to plead the alternative legal theories available to FIS as a result of the newly discovered evidence. (Dkt No. 118.) (As noted, FIS has appealed from Magistrate Judge Fox's decision denying FIS this leave to amend.) Moreover, on September 30, 2010, FIS asserted these claims as affirmative defenses and set-offs to the counterclaims filed by GLMS (following its "about-face" acceptance of the Amended Complaint, which it had been vigorously opposing until that time). (*See* Plaintiff/Counterclaim-Defendant Fidelity Information Services, Inc.'s Answer to Defendant/Counterclaim-Plaintiff Debtdomain GLMS Pte Ltd.'s Counterclaims (Dkt. 120) ("Answer to Counterclaims and Defenses"), a copy of which is Brocchini Decl. Exh. 3, Ninth Affirmative Defense, ¶¶ 77-83.) These events have provided even greater information about the factual underpinnings of FIS' unfair competition claims to Defendants.

18

for unfair competition under New York law.[11]   Instead, the Report concludes with no analysis that to allow FIS to assert such facts would be to allow an impermissible amendment to its pleadings. This is simply not true.

First, FIS has all along asserted an unfair competition claim along with its other claims.   During the course of discovery on those claims, FIS unearthed additional evidence to support the unfair competition claim.   As is typical in many litigations, FIS is relying on this newly adduced evidence to support the extant claim.   There is nothing unusual about that, and it does not rise to the level of an amendment.   *See, e.g.*, Fed. R. Civ. P. 15(b) (permitting amendment through trial and after judgment to amend the pleadings to conform to the evidence, stating that at trial amendment should be freely permitted when doing so will aid in presenting the merits and the objecting party fails to demonstrate prejudice, and authorizing a court to grant a continuance in the midst of a trial to enable the objecting party to meet the evidence).

Second, even if characterized as an "amendment," FIS should be permitted to make such amendment to conform the pleadings to the facts uncovered during discovery from Defendants and as to which Defendants have had notice since at least July 1, 2010. For a detailed description of Defendants' violation of Rothman's non-competition

---

[11] The Report does not take issue with FIS' contention that the tort of unfair competition reaches each area of wrongdoing alleged in FIS' response to Interrogatory No. 16 and in the Moore Contempt Declaration (as discussed further below).   The tort encompasses:   (1) misappropriation of proprietary information and trade secrets, *see, e.g., Beverage Mktg. USA, Inc. v. South Beach Beverage Co., Inc.,* 20 A.D.3d 439, 440, 799 N.Y.S.2d 242, 244 (2d Dep't 2005); *CBS Corp. v. Dumsday,* 268 A.D.2d 350, 353, 702 N.Y.S.2d 248, 251 (1st Dep't 2000); (2) claims of tortious interference, *see Ingemuit, Ltd. v. Harriff,* 33 A.D.3d 589, 589, 822 N.Y.S.2d 301, 303 (2d Dep't 2006) (finding likelihood of success on tortious interference claim where Defendant's wrongful conduct included unfair competition); *Cardiocall, Inc. v. Serling,* 492 F. Supp. 2d 139, 153 (E.D.N.Y. 2007) (independent tort of unfair competition established the "wrongful conduct" necessary to state a claim for interference); and (3) breach of a noncompetition agreement, *Sea Tow Services, International, Inc. v. Pontin*, 607 F. Supp. 2d 378 (E.D.N.Y. 2009) (denying summary judgment on claim that breach of restrictive covenant constituted unfair competition); *Design Strategy Corp. v. Knack Systems, LLC*, 2007 WL 4562926, at *2 (S.D.N.Y. 2007) (enforceable noncompetition provisions are designed to prevent "unfair competition").

19

agreement (so-ordered by Judge Koeltl in Rothman I), see Memorandum of Law of Plaintiff Fidelity Information Services, Inc. in Support of its Motion for Contempt Against All Defendants, Moore S.J. Decl. Exh. B, at 4-22.) As discussed more fully in Fidelity's appeal from the Memorandum and Order, which FIS is filing at this time and which FIS incorporates herein in full by reference, FIS did not delay in putting Defendants on notice of the facts supporting this claim or in moving to amend, for that matter; but, rather, FIS promptly disclosed those facts known as of July 1, 2010, when it served its interrogatory responses. *See* (CDF ¶¶ 158, 159 (citing FIS' Response to Defendants' Second Set of Interrogatories, Moore S.J. Decl. Exhibit N, Response No. 16.)

Next, there is no conceivable prejudice to Defendants, since discovery on these new facts – which lie completely within Defendants' possession, custody and control – is completed. Finally, since FIS has asserted these very same facts as an affirmative defense to Debtdomain GLMS' newly added counterclaims (filed well after FIS' July 1, 2010 interrogatory response), the parties and the Court will have to address these claims in any event. (*See* Answer to Counterclaims and Defenses, Ninth Affirmative Defense, Brocchini Decl. Exh. 3, at ¶¶ 77-83.) It simply would be unfair and inappropriate to preclude FIS from prosecuting these claims based on egregious wrongful conduct as affirmative claims, when the Court must hear them as part of FIS' defenses. So, whether labeled an "amendment" or not, FIS should be permitted to have its claims resolved on the merits, and, thus, the Report's recommendation regarding the unfair competition claim should be rejected.

## CONCLUSION

For the above reasons, Plaintiff, Fidelity Information Services, Inc.'s objections to the Report should be accepted, the Report rejected, and the case remanded for trial on the merits of FIS' copyright and unfair competition claims.

Dated: August 25, 2011
       New York, New York

Respectfully submitted,

**REAVIS PARENT LEHRER LLP**
*Attorneys for Plaintiff*
*Fidelity Information Services, Inc.*

By _Mark H. Moore_

Mark H. Moore (MM-8604)
Lawrence Brocchini (LB-2628)

41 Madison Avenue, 41st Floor
New York, NY 10010
Tel.:   (212) 763-4100
Fax: (212) 763-4141
mmoore@rpl-law.com
lbrocchini@rpl-law.com

21